# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## 23-2191

---

### UNITED STATES OF AMERICA,

Appellee,

v.

### BRANDON MANNING,

Appellant.

---

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF IOWA*
*HONORABLE LEONARD T. STRAND, CHIEF U.S. DISTRICT COURT JUDGE*

---

### APPELLANT'S BRIEF

---

### Brad Hansen
*FEDERAL DEFENDER'S OFFICE*
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

### ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE AND
## REQUEST FOR ORAL ARGUMENT

A jury found Appellant Brandon Manning guilty of two counts of possession of child pornography but not guilty of receiving visual depictions of minors engaging in sexually explicit conduct. On the counts of conviction, the district court sentenced him to 240 months' imprisonment.

This appeal raises both trial and sentencing issues. Mr. Manning argues that the district court erroneously admitted prejudicial evidence at his trial. One of his arguments raises an issue of first impression for this Court—whether the categorical approach applies in interpreting Rule 414 of the Federal Rules of Evidence.

At sentencing, the district court committed procedural errors that increased Mr. Manning's guideline range and resulted in a sentence longer than it otherwise would have been.

Mr. Manning's appeal raises significant issues for this Court's consideration. He requests 15 minutes of oral argument per side.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR
ORAL ARGUMENT ...............................................................i

TABLE OF AUTHORITIES...................................................iv

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND
MOST APPOSITE AUTHORITIES ..................................2

STATEMENT OF THE CASE ...............................................4

    I.     MOTION IN LIMINE ................................................4

    II.    GOVERNMENT'S CASE AT TRIAL ........................6

    III.   DEFENSE CASE AT TRIAL .................................16

    IV.   VERDICT ................................................................17

    V.    POST-TRIAL MOTION..........................................17

    VI.   SENTENCING .......................................................18

SUMMARY OF ARGUMENT ..............................................22

ARGUMENT ........................................................................23

    I.     MR. MANNING IS ENTITLED TO A NEW TRIAL
BASED ON EVIDENTIARY ERRORS...................23

         A.    The District Court Erred by Admitting Late-
Disclosed Evidence of Incriminating Writing on
the Cell Phone Cover ..................................23

Appellate Case: 23-2191    Page: 3    Date Filed: 09/19/2023 Entry ID: 5317958

B.    The District Court Erred by Allowing the Government to Introduce Evidence of Mr. Manning's Prior Conviction ........................................ 29

    1.    The Categorical Approach Applies to Determine Whether a Defendant has a Prior Conviction for "Child Molestation" ........... 30

    2.    Evidence of a Prior Crime is Admissible Under Rule 414 Only If It Required Proof of a Victim Under 14 Years of Age ........................ 33

C.    The Evidentiary Errors were Prejudicial ................... 36

II.    MR. MANNING SHOULD BE RESENTENCED ............... 38

A.    The District Court Erred by Applying an Obstruction of Justice Enhancement Pursuant to USSG § 3C1.1 ................................................................. 38

B.    The District Court Committed Clear Error by Finding that Mr. Manning Committed His Offense While Under a Criminal Justice Sentence and Applying USSG § 4A1.1(d) .................................... 42

CONCLUSION ................................................................................. 45

CERTIFICATE OF FILING AND SERVICE ......................................... 46

FED. R. APP. P. 32(a)(7) AND 8TH CIR. RULE 28A(c) CERTIFICATION ........................................................................ 47

iii

# TABLE OF AUTHORITIES

**Statutes**

18 U.S.C. § 924 ................................................................................. 30, 31

18 U.S.C. § 2252 ................................................................................. 4, 29

18 U.S.C. § 2252A ..................................................................................... 4

18 U.S.C. § 2256 ...................................................................................... 33

Iowa Code § 728.1 ................................................................................. 5, 33

Iowa Code § 728.12 ............................................................................... 4, 33

**Rules**

Fed. R. App. P. 4 ....................................................................................... 21

Fed. R. Evid. 404 ...................................................................................... 35

Fed. R. Evid. 414 ............................................................................ 5, 29, 33, 34

**Guidelines**

USSG § 3C1.1 ........................................................................................ 39, 40

USSG § 4A1.1 ............................................................................................ 42

**Cases**

**Supreme Court**

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) .................................... 34

*Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332 (1994) ........... 34

*Kyles v. Whitley*, 514 U.S. 419 (1995) ..................................................... 26

iv

*Mathis v. United States*, 579 U.S. 500 (2016) ..................................... 2, 30

*Nijhawan v. Holder*, 557 U.S. 29 (2009) ............................................ 31-32

*Taylor v. United States*, 495 U.S. 575 (1990) ................................ 2, 30, 31

*United States v. Rodriquez*, 553 U.S. 377 (2008) ................................... 32

**Courts of Appeals**

*United States v. Adams*, 783 F.3d 1145 (8th Cir. 2015) ......................... 23

*United States v. Brooks*, 723 F. App'x 671 (11th Cir. 2018)
(unpublished) ............................................................................. 30, 32

*United States v. Campos*, No. 21-3524, 2023 WL 5211563
(8th Cir. Aug. 15, 2023) ............................................................. 38, 44

*United States v. Davis*, 244 F.3d 666 (8th Cir. 2001) ....... 2, 24, 25, 26, 27

*United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014) ............... 30, 32, 34

*United States v. Kenyon*, 7 F.3d 783 (8th Cir. 1993) ............................. 40

*United States v. Kuhnel*, 25 F.4th 559 (8th Cir. 2022) ........................... 27

*United States v. Lamere*, 980 F.2d 506 (8th Cir. 1992) .................... 40-41

*United States v. Perez*, 46 F.4th 691 (8th Cir. 2022) ............................. 31

*United States v. Rahimi*, 61 F.4th 443 (5th Cir.),
*cert. granted*, 143 S. Ct. 2688 (2023) ............................................. 32

*United States v. Street*, 548 F.3d 618 (8th Cir. 2008) ............................ 37

*United States v. Sturm*, 673 F.3d 1274 (10th Cir. 2012) ....................... 34

*United States v. Welshans*, 892 F.3d 566 (3d Cir. 2018) ................... 2, 41

Appellate Case: 23-2191     Page: 6     Date Filed: 09/19/2023 Entry ID: 5317958

**District Court**

*United States v. Neuhard*, No. 15-cr-20425, 2016 WL 6871454
(E.D. Mich. Nov. 22, 2016) (unpublished)......................................35

## <u>Other</u>

2 Federal Evidence § 4:86 (Mueller & Kirkpatrick) ..............................35

*Amendments to the Sentencing Guidelines* (May 2023),
https://www.ussc.gov/sites/default/files/pdf/amendment-
process/official-text-amendments/202305_Amendments.pdf........19

Appellate Case: 23-2191    Page: 7    Date Filed: 09/19/2023 Entry ID: 5317958

# JURISDICTIONAL STATEMENT

<u>The decision appealed:</u>  Mr. Manning appeals from the judgment entered against him in the U.S. District Court for the Northern District of Iowa.

<u>Jurisdiction of the court below:</u>  The district court had jurisdiction over all aspects of Mr. Manning's prosecution under 18 U.S.C. § 3231, because he was charged with offenses against the laws of the United States.

<u>Jurisdiction of this Court:</u>  This Court has jurisdiction over Mr. Manning's appeal under 28 U.S.C. § 1291, which provides for jurisdiction over a final decision from a U.S. District Court.

The district court imposed the judgment on April 28, 2023.  (Add., pp. 1-8, R. Doc. 125.)  Mr. Manning's timely notice of appeal was filed on May 12, 2023.  (R. Doc. 129.)

Appellate Case: 23-2191    Page: 8    Date Filed: 09/19/2023 Entry ID: 5317958

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW AND MOST APPOSITE AUTHORITIES

(1)    Whether the district court erred by admitting late-disclosed, prejudicial evidence;

Most Apposite Authority:    *United States v. Davis*, 244 F.3d 666 (8th Cir. 2001).

(2)    Whether the district court erred by failing to apply the categorical approach to interpret Rule 414 of the Federal Rules of Evidence and admitting evidence of Mr. Manning's prior conviction;

Most Apposite Authorities:    *Mathis v. United States*, 579 U.S. 500 (2016); *Taylor v. United States*, 495 U.S. 575 (1990).

(3)    Whether the district court erred by concluding that a spontaneous and unsuccessful attempt to destroy evidence involves the premeditation required to constitute obstruction of justice under USSG § 3C1.1; and

Most Apposite Authority:    *United States v. Welshans*, 892 F.3d 566 (3d Cir. 2018).

Appellate Case: 23-2191    Page: 9    Date Filed: 09/19/2023 Entry ID: 5317958

(4)     Whether the district court erred by finding that Mr. Manning committed his offense while under a criminal justice sentence, and thus that USSG § 4A1.1(d) applied.

<u>Most Apposite Authorities:</u>   No particularly apposite authorities (factual issue).

Appellate Case: 23-2191     Page: 10     Date Filed: 09/19/2023 Entry ID: 5317958

## STATEMENT OF THE CASE

A superseding indictment (R. Doc. 69) filed in the Northern District of Iowa charged Mr. Manning with receipt of child pornography, 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count 1); possession of child pornography found on a San Disk micro SD card from a broken Samsung smart phone, 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count 2); and possession of child pornography found on a loose Western Digital hard drive, *id.* (Count 3). The government also provided notice of its intent to seek enhanced statutory penalties based on Mr. Manning's 2013 conviction for sexual exploitation of a minor, Iowa Code § 728.12(3). (R. Doc. 20; R. Doc. 69.) Mr. Manning pled not guilty to all charges and proceeded to trial. (*See* R. Doc. 72.)

## I.   <u>MOTION IN LIMINE</u>

Before trial, Mr. Manning filed a motion in limine seeking various pretrial evidentiary rulings. (R. Doc. 54.) He argued, among other things, that the court should exclude evidence regarding his prior conviction. He contended that the conviction was not admissible under Federal Rule of Evidence 414, which provides for admission of evidence of similar crimes in child molestation cases. He argued that the court

4

should apply the categorical approach to determine whether the prior offense is a "child molestation" crime. Because the rule defines "child" as "a person below the age of 14," Fed. R. Evid. 414(d)(1), and the Iowa offense could be committed against an individual older than that age, *see* Iowa Code § 728.1(4), Mr. Manning's position was that the Iowa offense did not qualify for admission. He also argued that the court should exclude the prior conviction evidence as substantially more prejudicial than probative under Rule 403.

In response (R. Doc. 59), the government argued that the conviction was admissible under Rule 414(d)(2)(B), which defines "child molestation" as "any conduct prohibited by 18 U.S.C. chapter 110," including child pornography offenses. The government also asserted that the evidence was admissible under Rule 403.[1]

The district court denied Mr. Manning's motion in limine on this score. (Add., pp. 9-19, R. Doc. 75.) The court rejected his argument that the categorical approach applies in interpreting Rule 414. It concluded

---

[1]     Although the government's brief did not address admissibility under Rule 404(b), it filed separate notices of its intent to admit the evidence pursuant to Rule 404(b). (R. Doc. 56; R. Doc. 65.)

5

that Mr. Manning's prior conviction was an act of "child molestation" under Rule 414, and evidence regarding it was not substantially more prejudicial than probative under Rule 403.

## II. GOVERNMENT'S CASE AT TRIAL

At trial, the government called three witnesses: former Mason City (Iowa) Police Investigator Tyson Anderson, Iowa Division of Criminal Investigation (DCI) Agent and forensic examiner Michael Kircher, and Mason City Police Investigator Terrance Prochaska.

Former Investigator Anderson testified that he began investigating Brandon Manning based on alleged child-pornography-related activity reported to law enforcement. (Trial Tr. II, pp. 183-85.) At the time, Mr. Manning resided in the upstairs portion of a duplex in Mason City. (*Id.*, p. 199.) The information about possible child pornography activities received by Mr. Anderson was tied to the separate main-level residence in the duplex and another address on the other side of Mason City. (*See id.*, pp. 209-12.) According to his testimony, Mr. Anderson learned that Mr. Manning had a 2013 conviction in Iowa for sexual exploitation of a minor, which, among

6

other factors, led him to focus on Mr. Manning as the suspect. (*Id.*, p. 185; Ex. 1, R. Doc. 87-3.)

On March 12, 2020, Mr. Anderson obtained and executed a search warrant for Mr. Manning, his residence, and his vehicle. (Trial Tr. II, pp. 188-89.) Notwithstanding the fact that Mr. Anderson was eventually joined by at least seven other officers at the scene, there was no video footage and no audio recordings presented at trial to corroborate any observations allegedly made that day. (*See id.*, pp. 213-14, 225-26.)

When Mr. Anderson arrived to conduct the search, he saw Mr. Manning leave his residence and enter his vehicle with a female acquaintance. Mr. Manning then put his vehicle into reverse to leave his driveway, but Mr. Anderson blocked him with his police vehicle. Mr. Manning complied with Mr. Anderson's order to exit the vehicle. In a search of Mr. Manning's person, Mr. Anderson found a Samsung smart phone with a protective case. Although Mr. Anderson did not search Mr. Manning's vehicle at that time, he looked inside of it and did not see any electronic devices. (*Id.*, pp. 189-92.) Mr. Anderson advised

7

Mr. Manning that he was free to leave, but Mr. Manning initially remained on the scene. (*Id.*, p. 222.)

After Mr. Anderson helped secure the residence, he allegedly saw Mr. Manning reenter his vehicle, which officers had failed to secure. (*Id.*, pp. 193-94, 223.) According to Mr. Anderson, Mr. Manning then yelled something indiscernible and "move[d] abruptly," with his "shoulders heaving up and his head moving back." (*Id.*, p. 194.) Mr. Anderson supposedly made this observation through the rear window of the vehicle. (*Id.*, p. 195.) Once Mr. Manning exited the vehicle, Mr. Anderson found a broken Samsung smart phone (Ex. 8, R. Doc. 87-1) on the driver's floorboard and glass on the driver's seat. (*Id.*, pp. 195-97; *see also* Exs. 7b-7d, R. Doc. 87-10, R. Doc. 87-11, R. Doc. 87-12.) Mr. Anderson acknowledged on cross-examination that he did not actually see Mr. Manning break the phone. (Trial Tr. II, p. 223.) The SD card inside of that broken phone (Ex. 9, R. Doc. 87-1) formed the basis for Count 2 in the superseding indictment. Mr. Anderson did not interview Mr. Manning, who made no incriminating statements.

From there, Mr. Anderson and other officers began the search of Mr. Manning's one-bedroom residence. (*See* Trial Tr. II, p. 199.)

8

According to Mr. Anderson, the home was in disarray, and it was possible that more than one person was staying there. (*Id.*, pp. 226-27; *see also* Ex. 7i, R. Doc. 87-17.) Mr. Anderson encountered Richard Latham and Jessica Wogstad in the living room. Mr. Manning's landlord was also present during the search. Mr. Anderson allowed both Mr. Latham and Ms. Wogstad to leave the scene with their cell phones. Neither phone was searched for contraband, nor was any individual present interviewed about child pornography. (*See* Trial Tr. II, pp. 199-202, 214-17, 221.)[2]

The search led to the discovery of a substantial number of electronic devices in the bedroom. (*See id.*, pp. 204-07.) Inside of a hutch in that bedroom, Mr. Anderson discovered the Western Digital hard drive cited in Count 3 of the indictment. (Ex. 10, R. Doc. 87-1.) The hard drive was not connected to a laptop or any other computer. (*See* Trial Tr. II, p. 275.) On top of the hutch, Mr. Anderson located a red HP laptop. (Ex. 7m, R. Doc. 87-21.) On top of the bed, Mr.

---

[2]     According to Mr. Anderson, Melissa Rick likely had a cell phone as well, but police did not search her phone or interview her about the investigation. (Trial Tr. II, pp. 202, 217-18.)

Appellate Case: 23-2191     Page: 16     Date Filed: 09/19/2023 Entry ID: 5317958

Anderson found a Dell laptop computer.  (Ex. 7k, R. Doc. 87-19.)   A bucket containing numerous cell phones was located next to the bed.  (Ex. 7s, R. Doc. 87-27.)  A tablet with a pink cover and a broken screen was found in a dresser drawer.  (Exs. 7p-7q, R. Doc. 87-24, R. Doc. 87-25.)

In June 2020 (after a delay owing to the COVID-19 pandemic), Mr. Anderson transported the seized devices to a DCI laboratory, where Agent Kircher conducted forensic examinations in April 2021.  (Trial Tr. II, pp. 207-08, 241, 244.)   Agent Kircher testified that he identified numerous images and videos of minors engaging in sexually explicit conduct on the SD card from inside the broken phone (Ex. 9, R. Doc. 87-1) and the loose Western Digital hard drive (Ex.10, R. Doc. 87-1).  (Trial Tr. II, pp. 242-43.)  During Agent Kircher's testimony, the government showed the jury three images and three videos depicting child exploitation from each of the two devices (12 depictions total, Exs. 12, 13, 14 and 15; R. Doc. 87-1).  (Trial Tr. II, pp. 244-61.)

Agent Kircher also provided testimony designed to tie Mr. Manning to the devices at issue.  On the SD card, Agent Kircher found a selfie (Ex. 21, R. Doc. 87-57) of a man "who [he] was later told was Mr.

Manning." (Trial Tr. II, pp. 253-54.) Agent Kircher also generated a report (Ex. 16, R. Doc. 87-53) showing that brandonmanning34@gmail.com, brandonmanning34@yahoo.com, and larryflint629@gmail.com had been used as logins on the Chrome Internet browser on the hard drive. (Trial Tr. II, pp. 262-64.) Mr. Manning had verified to law enforcement as late as February 2020 that brandonmanning34@gmail.com and brandonmanning34@yahoo.com were his email addresses. (*Id.*, pp. 186-87; Ex. 2, R. Doc. 87-4.)

On cross-examination, Agent Kircher acknowledged several important facts. First, he knew that Mr. Manning was the suspect before he conducted his examinations. (Trial Tr. II, p. 267; *see also* Ex. A, R. Doc. 87-58.) Thus, he went into the examinations looking for evidence tying Mr. Manning to the crime, rather than having an open mind while examining a vast quantity of data. In conducting that examination, he relied on search terms, rather than careful review of the data on the one-terabyte Western Digital hard drive or the eight-gigabyte SD card. (Trial Tr. II, pp. 275-78.)

Second, Agent Kircher did not find illegal imagery on the majority of the devices submitted to the lab. Most notably, the first cell phone

11

found in Mr. Manning's possession when then-Investigator Anderson first searched him contained no contraband. (*See id.*, pp. 222, 272.) Additionally, the HP laptop found in Mr. Manning's bedroom did not contain any illegal images or videos. The Dell laptop found on the bed was encrypted and unable to be examined. The numerous cell phones found in the bucket in the bedroom either did not contain illegal imagery or could not be examined for one reason or another. A manual examination of the tablet with a broken screen and a pink cover did not reveal any illegal imagery. (*Id.*, pp. 268-74.)

Third, evidence discussed during Agent Kircher's testimony made clear that individuals other than Mr. Manning also used the Western Digital hard drive. One of those other individuals utilized a username of 6412016071 on the Chrome browser. (*Id.*, pp. 279-83; Ex. B, R. Doc. 87-59.) The Western Digital hard drive also contained a text message sent by the phone number 641-201-6071 stating: "U disabled my phone u r going to jail go cry to ur new friends and have fun u never lovd me Lov lynane." (Trial Tr. II, pp. 284-86; Ex. D, R. Doc. 87-61.) In other words, the evidence suggested that "Lynane" used the computer, but

12

also that she felt scorned enough to send a mocking text (presumably to Mr. Manning) saying "u r going to jail."

Agent Kircher's testimony also left several unanswered questions. First, there was no evidence establishing what computer the loose hard drive was associated with. Agent Kircher testified that it was "[l]ikely a laptop," but also acknowledged that it could have been associated with multiple computers. (Trial Tr. II, pp. 274-75.) Second, Agent Kircher explained the existence of the text messages on the hard drive by testifying that the drive must have been associated with a cell phone at some point, but there was no evidence offered regarding what phone that would have been. (*Id.*, p. 284.) Third, although the SD card was inside of a cell phone, Agent Kircher acknowledged that there were no text messages associated with that device. (*Id.*, p. 287.)

The government's final witness was Investigator Prochaska, who became the case agent after Mr. Anderson quit law enforcement in the autumn of 2020. (*Id.*, pp. 208-09, 296.) According to Investigator Prochaska, information from Google showed that brandonmanning34@gmail.com was Mr. Manning's account, and it was associated with the alternative email address of

13

brandonmanning34@yahoo.com. (*Id.*, pp. 296-98; Ex. 17, R. Doc. 87-54.) Investigator Prochaska also testified that brandonmanning34@gmail.com and larryflint629@gmail.com (both of which, as noted, were associated with Chrome logins on the Western Digital hard drive) used Mr. Manning's bank account number for Google payments. (Trial Tr. II, pp. 298-300; Ex. 17, R. Doc. 87-54; *see also* Ex. 19, R. Doc. 87-55.)

Over Mr. Manning's objection (*see* Trial Tr. II, pp. 161-68), Investigator Prochaska also testified about a peculiar discovery he allegedly made shortly before trial. The cell phone containing the SD card with illegal images had remained in police custody since it was seized on March 12, 2020. Before Investigator Prochaska had custody of the device, Mr. Anderson had previously handled the device and transported it to the DCI lab, and Agent Kircher had disassembled the device to conduct his forensic examination. Nevertheless, in the days before trial[3] (after the phone had been in continuous police custody for

---

[3] Investigator Prochaska testified that he made this discovery on November 7, 2022. (Trial Tr. II, p. 302.) A report that he authored, however, states he made this finding on November 8. (R. Doc. 102-2.)

Appellate Case: 23-2191    Page: 21    Date Filed: 09/19/2023 Entry ID: 5317958

more than two-and-a-half years), Investigator Prochaska supposedly found that the inside of the back cover of the phone contained the following handwritten message: "FAK PTHC Rocks." He testified that "PTHC" stands for "preteen hardcore." (*Id.*, pp. 302-04.)[4] For their part, Mr. Anderson testified that he saw the writing, did not know what it meant, and failed to document it in his report; and Agent Kircher testified that he did not notice the writing. (*Id.*, pp. 229, 265; *see also id.*, pp. 308-11.)

At the close of the government's case, Mr. Manning orally moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court denied the motion. (*Id.*, pp. 325-26.)

---

[4]     It is unclear what "FAK" means. Investigator Prochaska's report suggested one possibility (*see* R. Doc. 102-2, p. 2), but he did not testify at trial as to the meaning of "FAK." (*See* Trial Tr. II, pp. 303-04.)

15

## III. **DEFENSE CASE AT TRIAL**

The defense called three witnesses: Richard Latham, Jessica Wogstad, and Michelle Funk.[5]

All of the witnesses generally testified that several people frequented Mr. Manning's residence, had access to his electronic devices, and used them, including his ex-girlfriend Lynane and Mr. Latham, among others. Ms. Wogstad testified that Lynane and Mr. Manning had a tumultuous relationship (as evidenced by the message from her in evidence, Ex. D, R. Doc. 87-61), and that Lynane was "crazy." (Trial Tr. III, p. 353.) Mr. Latham testified that "[i]t's possible" that he himself used Mr. Manning's devices, and Ms. Wogstad testified that although she never saw Mr. Latham using the devices, he was in "control of the house and, like, [Mr. Manning's] belongings" when Mr. Manning was away. (*Id.*, pp. 356, 372.)

At the close of the defense's case, the court denied Mr. Manning's renewed Rule 29 motion. (*Id.*, pp. 392-93.)

---

[5] Unfortunately, a fourth potential defense witness suffered a terrible family tragedy on the morning that she was scheduled to testify, so she was unavailable and excused. (*See* Trial Tr. III, pp. 340-41.)

16

## IV. **VERDICT**

After several hours of deliberation, the jury returned a not guilty verdict on Count 1 (receipt of visual depictions of minors engaging in sexually explicit conduct) and guilty verdicts on Counts 2 and 3 (possession of child pornography on the SD card and the loose hard drive, respectively). (R. Doc. 84; *see* R. Doc. 87.)

## V. **POST-TRIAL MOTION**

After trial, Mr. Manning filed a renewed motion for judgment of acquittal or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(2). (R. Doc. 102.) With respect to the renewed Rule 29 motion, Mr. Manning argued that no reasonable jury could have found him guilty, and that the jury's verdict convicting him of the possession counts was irreconcilable with its decision to acquit him on the receipt count. Regarding the Rule 33 motion, Mr. Manning argued that the interests of justice required a new trial because of the lack of evidence of his guilt, the government's late disclosure of the incriminating writing on the cell phone, and the court's erroneous ruling on his motion in limine.

17

The district court denied Mr. Manning's motion.  (Add., pp. 20-29, R. Doc. 120.)  It concluded that the jury rationally convicted him on Counts 2 and 3, notwithstanding the acquittal on Count 1, because it was plausible for a jury to find that he was not responsible for downloading the illegal imagery and yet responsible for possessing it. The court rejected his argument for a new trial because the government did not act intentionally or recklessly in the late disclosure, Mr. Manning could have sought a trial continuance, and he was not prejudiced; and the court found no error in its pretrial evidentiary rulings.

## VI.  SENTENCING

At sentencing, Mr. Manning made two objections to the Presentence Investigation Report (PSR) relevant to the guideline sentencing range.  (*See* R. Doc. 109; R. Doc. 116-1.)

First, he argued that a two-offense-level enhancement for obstruction of justice under USSG § 3C1.1 did not apply.  In support of the enhancement, the PSR cited Mr. Manning's alleged breaking of the cell phone containing the SD card that formed the basis for Count 2. Mr. Manning denied breaking the phone, but in any event, he argued

18

that breaking the phone contemporaneously with the execution of the search warrant did not qualify as obstruction of justice under § 3C1.1. (R. Doc. 116-1, pp. 2-4.)

Second, Mr. Manning argued that the PSR incorrectly attributed him two criminal history points pursuant to USSG § 4A1.1(d)[6] for having committed the offense while serving a criminal justice sentence. According to the PSR, Mr. Manning's sentence for his Iowa conviction for sexual exploitation of a minor expired on September 13, 2018. The PSR cited "discovery materials" showing that the "earliest date the defendant downloaded child pornography onto his devices was May 1, 2018." (PSR ¶ 42; *see also id.* ¶ 36.) Mr. Manning argued that the illegal imagery introduced into evidence at trial was all "created" after September 13, 2018, and that the only evidence of earlier child pornography was Agent Kircher's equivocal trial testimony that it

---

[6] A pending amendment to USSG § 4A1.1 would reduce or eliminate the enhancement for commission of an offense while serving a criminal justice sentence. *See* USSC, *Amendments to the Sentencing Guidelines* 43-45 (May 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. That amendment would have no impact on Mr. Manning's criminal history category.

Appellate Case: 23-2191     Page: 26     Date Filed: 09/19/2023 Entry ID: 5317958

might have been downloaded onto the hard drive as early as August 2018. In light of that, he argued that there was a lack of evidence that he committed his federal offense on or before September 13, 2018, as would be required for the enhancement. (R. Doc. 116-1, pp. 4-5.)

At sentencing,[7] the government did not offer evidence or testimony relating to either of the guideline objections, though it did offer numerous exhibits mostly relating to restitution requests and testimony from Investigator Prochaska about other issues. (*See* Sentencing Tr. I, pp. 5-16; R. Doc. 117-1 to R. Doc. 117-29.) Nonetheless, the district court overruled both of the guideline objections. (Sentencing Tr. I, pp. 25-26, 30.)

The district court ultimately sentenced Mr. Manning to 240 months' imprisonment, which fell within the objected-to guideline range. The court also imposed a five-year term of supervised release and restitution obligations totaling $118,000, on top of other assessments. (Sentencing Tr. II, pp. 56-63.)

---

[7] For reasons not at issue in this appeal, Mr. Manning's sentencing proceedings required two separate hearings. (*See* R. Doc. 119; R. Doc. 124.)

20

The district court imposed the judgment against Mr. Manning on April 28, 2023, and filed it on the docket on May 1, 2023. (Add., pp. 1-8, R. Doc. 125.) Mr. Manning's notice of appeal was filed within 14 days of either date (*see* R. Doc. 129), and thus it is timely. Fed. R. App. P. 4(b)(1)(A)(i).

Appellate Case: 23-2191   Page: 28   Date Filed: 09/19/2023 Entry ID: 5317958

## SUMMARY OF ARGUMENT

Mr. Manning is entitled to a new trial or, in the alternative, resentencing.

A new trial is warranted because the district court erroneously admitted prejudicial evidence at trial. The district court should have excluded late-disclosed evidence that the cell phone with the SD card that formed the basis for Count 2 had "PTHC" written on its cover. In an issue of first impression for this Court, Mr. Manning also argues that the district court should have applied the categorical approach and excluded evidence of his prior Iowa conviction for sexual exploitation of a minor, which was not admissible under Rule 414.

If Mr. Manning does not receive a new trial, he should be resentenced. The district court erred by applying an enhancement for obstruction of justice under USSG § 3C1.1. Additionally, the district court made a clearly erroneous factual finding that Mr. Manning committed his offense while serving a criminal justice sentence, which led to another guideline enhancement under USSG § 4A1.1(d).

22

# ARGUMENT

## I. MR. MANNING IS ENTITLED TO A NEW TRIAL BASED ON EVIDENTIARY ERRORS.

This Court reviews an objected-to evidentiary ruling for abuse of discretion. An evidentiary error is harmless (and thus not a basis for reversal) only if the substantial rights of the defendant were unaffected, and the error did not influence or had only a slight influence on the verdict. *United States v. Adams*, 783 F.3d 1145, 1149 (8th Cir. 2015).

### A. The District Court Erred by Admitting Late-Disclosed Evidence of Incriminating Writing on the Cell Phone Cover.

The chronology relevant to the late disclosure of the incriminating writing on the cell phone cover is as follows:

- March 12, 2020 – Mr. Anderson took the cell phone (Ex. 8, R. Doc. 87-1) into police custody, allegedly noticed the "FAK PTHC Rocks" writing, but did not document it. The phone remained in police custody from this point onward. (Trial Tr. II, p. 229.)

- June 2020 – Mr. Anderson transferred custody of the phone to the DCI for a forensic examination. (*Id.*, pp. 207-08.)

- April 2021 – Agent Kircher conducted the examination of the phone and thereafter returned custody over it and the other devices to the Mason City Police Department. (Ex. 6, R. Doc. 87-8.)

23

- January 14, 2022 – Mr. Manning was arraigned on the original indictment. (R. Doc. 9.)

- November 7 or 8, 2022 – Investigator Prochaska allegedly first noticed the writing on the phone cover. (Trial Tr. II, pp. 302-03; R. Doc. 102-2, p. 2.)

- November 9, 2022 – The government disclosed to Mr. Manning's counsel the existence of the writing on the phone cover. (*See* Trial Tr. I, pp. 18-22.)

- November 14, 2022 – The final pretrial conference and jury selection for Mr. Manning's trial occurred. (R. Doc. 79.)

Based on *United States v. Davis*, 244 F.3d 666 (8th Cir. 2001), the district court should have excluded the writing on the back cover of the cell phone because it was untimely disclosed. In *Davis*, the Eighth Circuit affirmed an order excluding DNA evidence from a robbery trial due to untimely disclosure. In that case, the district court had set a discovery deadline of February 28, but the FBI failed to request expedited DNA testing from an overburdened and understaffed crime laboratory until March 24, for a trial scheduled to start on April 3. The U.S. Attorney's Office received the preliminary DNA results (which were inculpatory) on March 30 and orally communicated them to defense counsel that day. On March 31, the U.S. Attorney's Office

24

provided defense counsel with the written report detailing the DNA results. *Id.* at 668-69.

*Davis* set out three nonexclusive factors to consider in imposing sanctions for untimely disclosure: (1) the reasons for the delay and whether the government acted intentionally or in bad faith, (2) the prejudice suffered by the defendant, and (3) whether any lesser sanction would remedy the prejudice and address the wrongdoing. *Id.* at 670. With respect to the first factor, the Court in *Davis* determined that the government acted with "reckless disregard for the discovery deadline," because it provided no justification for not acting with more diligence. *See id.* at 671. Regarding the second, the Court found that the late disclosure made it "virtually impossible, absent a continuance, for defendants to evaluate and confront the evidence against them." *Id.* Finally, the Court rejected the government's argument that a continuance was the appropriate remedy, because exclusion was appropriate "to maintain the integrity of the judicial process and respect the pressing scheduling problems of the district court." *Id.* at 673.

As in *Davis*, exclusion of the evidence at issue here was the appropriate remedy. The disclosure of material evidence five days before trial (and more than two-and-a-half years after it was discovered and seized by the investigating agency) runs contrary to the purpose of Federal Rule of Criminal Procedure 16. As *Davis* explained, Rule 16 is designed to:

> contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

244 F.3d at 673 n.4 (quoting Advisory Committee Note to Rule 16). Regarding the first *Davis* factor, the U.S. Attorney's Office itself in this case did not act in bad faith. But, in rejecting Mr. Manning's argument, the district court erred by not accounting for the wrongdoing of the Mason City Police Department, which maintained custody of the cell phone at issue for most of the time between its seizure and the trial. *Cf. Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (assigning duty to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). Former

26

Investigator Anderson's inaction, in particular, is shocking, assuming he in fact noticed that a significant piece of evidence contained unusual writing, failed to document his finding, and apparently failed to ask any other officer or do any investigation into what the writing might mean (even though "PTHC" is "a common acronym for 'pre-teen hardcore,'" *United States v. Kuhnel*, 25 F.4th 559, 563 (8th Cir. 2022)). This inaction is akin to the FBI's inaction in *Davis*, where the agency failed to request expedited DNA testing results for trial.

Mr. Manning was prejudiced by the delayed disclosure. In *Davis*, the defendants orally received notice of the incriminating DNA testing results four days before the scheduled trial date; in this case, Mr. Manning received notice of the writing five days before trial. The district court in this case concluded that "a continuance could have remedied any alleged prejudice now complained of" (Add., p. 27, R. Doc. 120, p. 8), but that overlooks *Davis*, which specifically rejected the notion that a detained defendant's only remedy for a discovery violation by the government is a trial continuance (and more time in pretrial custody). *See Davis*, 244 F.3d at 672-73.

27

The district court also erroneously reasoned that the writing on the phone was "seemingly no more prejudicial than the thousands of images discovered on the SD card taken from that phone." (Add., p. 27, R. Doc. 120, p. 8.) That misunderstands the nature of the prejudice. Mr. Manning's trial defense was that he was not responsible for, and did not know about, the PTHC imagery downloaded on the phone's SD card. That defense is undermined by evidence that someone wrote "PTHC" on the phone's cover. Accordingly, Mr. Manning would have benefited from time (certainly more than a few days before trial) to investigate whether the writing was even present when police seized the phone from him, and if so, why it would have been overlooked by law enforcement for more than two-and-a-half years before disclosure.

Finally, exclusion of the evidence was the appropriate remedy. As noted, a continuance would have meant more time in custody before trial. Exclusion would have sent a message to all agencies presenting cases for federal prosecution that they must be competent with evidence handling and timely in their disclosure of material evidence—whether it is inculpatory or exculpatory.

28

**B.** **The District Court Erred by Allowing the Government to Introduce Evidence of Mr. Manning's Prior Conviction.**

As noted, the district court denied Mr. Manning's motion in limine seeking exclusion of evidence of his prior Iowa conviction for sexual exploitation of a minor. (Add., pp. 10-14, R. Doc. 75, pp. 2-6; *see also* Ex. 1, R. Doc. 87-3.) This was also an abuse of discretion.

Rule 414(a) states that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a). The rule defines a "child" as "a person below the age of 14." Fed. R. Evid. 414(d)(1). The rule also defines "child molestation" as a "crime under federal law or under state law . . . involving," among other things, "any conduct prohibited by 18 U.S.C. chapter 110." *See* Fed. R. Evid. 414(d)(2). Chapter 110 includes the federal child pornography offenses, including receipt and possession of child pornography. *See* 18 U.S.C. § 2252. To resolve this appeal, this Court must first decide how to interpret the phrase "child molestation . . . crime."

29

1. **The Categorical Approach Applies to Determine Whether a Defendant has a Prior Conviction for "Child Molestation."**

The Court should apply the categorical approach to determine whether the prior conviction constitutes a "child molestation . . . crime" under Rule 414(d)(2). Although this Court has never addressed this particular question,[8] this conclusion flows from the Supreme Court's categorical approach jurisprudence.

For example, in interpreting the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), the Supreme Court ruled that a court must "look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis v. United States*, 579 U.S. 500, 519 (2016). The ACCA requires the court to decide whether the defendant has a conviction for a prior "offense" that constitutes a "serious drug offense" or a "crime" that constitutes a "violent felony." 18 U.S.C. § 924(e)(2). Similarly,

---

[8] Other circuits have, admittedly, concluded that the categorical approach does not apply in this context. *See United States v. Brooks*, 723 F. App'x 671, 681 (11th Cir. 2018) (unpublished); *see also United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014) (Rule 413).

30

Rule 414(d)(2) uses the term "crime" to define a qualifying "child molestation." The use of "crime" (as opposed to, for instance, "allegation") in both the ACCA and Rule 414 favors a focus on elements, not underlying conduct. *See Taylor*, 495 U.S. at 600-01.

Moreover, Rule 414 and the ACCA use the term "involve" in a similar manner. For instance, the ACCA requires a court to examine the elements of a state drug crime (not the underlying conduct) to determine whether it "involv[ed] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). If the elements do not (even if the defendant's conduct did), the defendant does not have a predicate conviction for the ACCA. *See United States v. Perez*, 46 F.4th 691, 698-702 (8th Cir. 2022). Similar to the ACCA, Rule 414(d)(2) provides that a "crime" is "child molestation" only if it "involve[ed]" one of the circumstances listed in subsections (d)(2)(A) through (F). Thus, if the ACCA requires use of the categorical approach to determine whether a state drug offense involved certain conduct, Rule 414 likewise requires application of the categorical approach. *See Nijhawan v. Holder*, 557

31

U.S. 29, 36 (2009) (noting that the Supreme Court has held that "involv[e] conduct" "refers to crimes as generically defined").

Given the textual similarities between the ACCA and Rule 414, there is no compelling reason to use different interpretive methods. The courts that have held otherwise rely simply on "the policy rationale . . . that a person who has engaged in the covered conduct is likely to engage in it again." *Brooks*, 723 F. App'x at 681 (quoting *Foley*, 740 F.3d at 1087). But the same policy underlies sentencing enhancements like the ACCA, *see United States v. Rodriquez*, 553 U.S. 377, 385 (2008), and, in any event, policy considerations cannot trump text. *See United States v. Rahimi*, 61 F.4th 443, 460 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023). The Supreme Court has made clear that the text of the ACCA mandates a categorical approach, so the similar text of Rule 414 requires the same.

Accordingly, a prior conviction constitutes a "child molestation . . . crime" only if the elements of the offense match an offense described in Rule 414(d)(2).

32

## 2. Evidence of a Prior Crime is Admissible Under Rule 414 Only If It Required Proof of a Victim Under 14 Years of Age.

The Iowa statute of conviction at issue provides as follows: "It shall be unlawful to knowingly purchase or possess a visual depiction of a minor engaging in a prohibited sexual act or the simulation of a prohibited sexual act." Iowa Code § 728.12(3). A "minor," for purposes of the statute, means "any person under the age of eighteen." *Id.* § 728.1(4). So, because the categorical approach applies, the question is whether the elements of the Iowa offense make it a "child molestation . . . crime" under Rule 414.

The district court concluded that the Iowa offense is a "child molestation . . . crime," because Rule 414(d)(2)(B) states that "any conduct prohibited by 18 U.S.C. chapter 110" qualifies as such an offense. Like the Iowa statute, Chapter 110 encompasses child pornography offenses committed against "any person under the age of eighteen years." *See* 18 U.S.C. § 2256(1). According to the district court, the definition of a "child" in Rule 414(d)(1) ("a person below the age of 14") does not limit the scope of the term "child molestation" in Rule 414(d)(2). (Add., pp. 11-13, R. Doc. 75, pp. 3-5 (citing, *inter alia*,

33

*United States v. Sturm*, 673 F.3d 1274, 1284 (10th Cir. 2012); *United States v. Foley*, 740 F.3d 1079, 1087 n.3 (7th Cir. 2014)).)

The district court's ruling was erroneous for several reasons. First, it is textually unsound. Rule 414 itself defines "child" for purposes of "this rule" as a person under the age of 14. If a "child" is a person under the age of 14, then a crime constitutes "child molestation" only if it involves a person under the age of 14. It makes little sense for the term "child" to carry different meanings in neighboring subsections of the same statute. *See generally Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) (noting the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning").

Second, the district court's interpretation invites strange results, which should be avoided. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1827 n.4 (2020) (Kavanaugh, J., dissenting). For instance, "child molestation" under Rule 414(d)(2) includes "contact between any part of the defendant's body — or an object — and a *child's* genitals or anus." Fed. R. Evid. 414(d)(2)(C) (emphasis added). Thus, a prior crime is clearly not admissible under Rule 414(d)(2)(C) if it involved contact

34

between the defendant and the genitals or anus of a minor aged 14 to 17 (because that minor would not be a "child" under Rule 414). *See United States v. Neuhard*, No. 15-cr-20425, 2016 WL 6871454, at *6 (E.D. Mich. Nov. 22, 2016) (unpublished) (noting that evidence of rape of 15-year-old is not admissible under Rule 414). It is counterintuitive that Rule 414 would exclude evidence of a hands-on sexual offense against a 14-year-old but allow for evidence of a pornography offense against a 17-year-old. Both offenses are undeniably awful, but the former is indisputably more serious and more indicative of a propensity to victimize children than the latter.

Third, policy considerations militate against the district court's conclusion. Rule 414 is a unique exception to the general rule against propensity evidence. *See* Fed. R. Evid. 404(b). Because Rule 414 runs so contrary to the general understanding that propensity evidence is inappropriate, courts should construe it narrowly and in the defendant's favor when ambiguity exists. *See* 2 Federal Evidence § 4:86 (Mueller & Kirkpatrick) ("Rule 414 represents a marked departure from tradition, in making room for a propensity inference, which suggests that [a] narrower reading is the right one.").

35

By defining "child" as an individual under 14 years of age, the drafters of Rule 414 made clear that only evidence of crimes involving younger minors is admissible under this exception to the rule against propensity evidence. Here, Iowa Code § 728.13 is not a "child molestation" crime because it encompasses conduct involving minors ages 14 through 17. Thus, the district court erred by admitting evidence of Mr. Manning's conviction pursuant to Rule 414.

## C. <u>The Evidentiary Errors were Prejudicial.</u>

As a result of the district court's evidentiary rulings, Mr. Manning faced a trial in a child pornography case where the jury received significantly prejudicial evidence. These rulings likely had an impact on the verdict against him on the possession counts and thus were not harmless error.

For one, this was a close case, as evidenced by the mixed verdict. As noted, the jury acquitted Mr. Manning of the receipt count and convicted him of the possession counts. This compromise verdict made little sense in light of the evidence—it meant that the jury found the evidence lacking that Mr. Manning downloaded the child pornography, but yet found that he knowingly possessed it on the two devices at

36

issue. Setting that apparent inconsistency aside, the mixed verdict shows that the jury did not perceive the evidence against Mr. Manning to be overwhelming. *See generally United States v. Street*, 548 F.3d 618, 633 (8th Cir. 2008) (concluding that an evidentiary error was not harmless in a "close case" involving a hung jury in the first trial and a mixed verdict in the second).

Although its verdict was inconsistent, the jury appropriately had doubt about Mr. Manning's guilt because several people had access to his electronic devices, and thus the opportunity to download and possess illegal imagery on them. For instance, the evidence established that Mr. Manning's ex-girlfriend had access to his devices. They had a tumultuous relationship, as evidenced by the text message in which she taunted Mr. Manning that he was "going to jail." The investigating officers did nothing to investigate who among these associates of Mr. Manning might be responsible for the illegal imagery. Thus, without the objected-to prejudicial evidence, the jury's reasonable doubt about who downloaded the illegal imagery on the devices likely would have

37

carried over to the question of whether Mr. Manning possessed the child pornography.[9]

Accordingly, Mr. Manning should receive a new trial on the counts of conviction.

## II.   MR. MANNING SHOULD BE RESENTENCED.

In two ways, the district court erred in calculating Mr. Manning's guideline range.  This Court reviews a district court's "construction and application of the Guidelines *de novo* and its factual findings for clear error, keeping in mind that the Government must prove by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement."  *United States v. Campos*, No. 21-3524, 2023 WL 5211563, at *2 (8th Cir. Aug. 15, 2023) (quotation marks omitted).

### A.   The District Court Erred by Applying an Obstruction of Justice Enhancement Pursuant to USSG § 3C1.1.

Over Mr. Manning's objection, the district court found that Mr. Manning qualified for a two-offense-level obstruction of justice

---

[9]    The government made much of Mr. Manning allegedly breaking the cell phone during execution of the search warrant, but former Investigator Anderson did not actually see him break the phone.  Mr. Manning was free to leave the scene, so it is unclear why he would remain and break a cell phone in the presence of police.

38

enhancement, USSG § 3C1.1, for "going to his vehicle and breaking and attempting to destroy evidence in the course of the execution of a search warrant." (Sentencing Tr. I, p. 26.) Even assuming the district court's finding that Mr. Manning attempted to break the cell phone was not clearly erroneous, the district court erred by applying § 3C1.1.

USSG § 3C1.1 provides as follows:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. Although the commentary warns that the "conduct to which this adjustment applies is not subject to precise definition," *id.* comment n.3, Application Note 4 provides a "non-exclusive" list of "Examples of Covered Conduct." Of most relevance, Application Note 4(D) states that "destroying . . . evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence) . . . or attempting to do so" constitutes obstruction of justice, *unless* it occurred

39

"contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance)" and did not "result[] in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." *Id.* comment. n.4(D) (emphasis added).[10]

The conduct at issue more closely resembles the latter example (attempting to swallow or throw away a controlled substance) than the former (shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence). As this Court has explained, the relevant distinction is between "cool and deliberate actions" (which constitute obstruction) and "a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent" (which does not). *United States v. Lamere*, 980 F.2d 506, 515

---

[10]  Although Application Note 4(D) uses the phrase "contemporaneous with arrest," this Court has implied that the distinction between an arrest and the execution of a warrant is immaterial. *See United States v. Kenyon*, 7 F.3d 783, 786 (8th Cir. 1993) (noting, and not disputing, a government concession that a defendant destroyed drug evidence "contemporaneously with the officers' execution of the search warrant" (when the defendant was not arrested), but deciding that the obstruction enhancement applied because the act delayed and materially hindered the investigation).

40

n.6 (8th Cir. 1992). Even if Mr. Manning was responsible for damaging the phone, there was no evidence that it was a premeditated act. Moreover, it did not result in any "material hindrance" to the investigation, prosecution, or sentencing proceedings because law enforcement recovered illegal imagery from the SD card, notwithstanding the damage to the phone.

The conduct at issue is similar to the conduct in *United States v. Welshans*, 892 F.3d 566 (3d Cir. 2018). In that case, the defendant "moved files into his laptop's recycling bin in a 'panic' after his aunt called to tell him that the police were on their way to his house" to execute a search warrant. *Id.* at 581. Police were able to restore the deleted files, which were part of an "extensive collection of child pornography." *Id.* at 571. The Third Circuit held that the obstruction enhancement did not apply based on Application Note 4(D), concluding that his panicked actions occurred contemporaneous with arrest and did not materially hinder the case against him. *Id.* at 579-83.

Here, as in *Welshans*, the conduct at issue was a visceral and spontaneous reaction to a law enforcement action. The district court erred by concluding that § 3C1.1 applied in this circumstance.

Appellate Case: 23-2191    Page: 48    Date Filed: 09/19/2023 Entry ID: 5317958

**B.** **The District Court Committed Clear Error by Finding that Mr. Manning Committed His Offense While Under a Criminal Justice Sentence and Applying USSG § 4A1.1(d).**

Mr. Manning was serving a criminal justice sentence until September 13, 2018. (PSR ¶ 36.) Under the guidelines in effect when he was sentenced, a two-point enhancement to the criminal history score applies "if the defendant committed the instant offense while under any criminal justice sentence." USSG § 4A1.1(d). Over Mr. Manning's objection, the district court found that the enhancement applied.

This was clearly erroneous. The government offered no evidence at sentencing relevant to Mr. Manning's objection. (*See* Sentencing Tr. I, p. 27.) The parties agreed that all of the evidence relevant to the issue appeared on a single page of the trial transcript. (*Id.*, pp. 26-30.) The relevant passage of Agent Kircher's testimony read as follows:

Q.  For the ones that you were able to determine when the [illegal images and videos] were created,[11] what's the approximate date range, the earliest that it started?

---

[11] Agent Kircher testified that the "creation" date of the imagery corresponded to the date that it was downloaded or copied onto a device. (Trial Tr. II, pp. 246-47.)

42

A.    On the SD card or the Western Digital or both?

Q.    You can do both.

A.    Both?  Around August of 2018.

Q.    Well, let's break it down individually.  Will you be able to recall better per device?

A.    If I recall, it was the – on the Western Digital it was August of 2018.  On the SD card I want to say December of 2018 as well or 2019.

Q.    Okay.  What's the latest date that you would have had on there?

A.    On the SD card I believe it was January of 2020, and on the Western Digital, I believe it was July – 2019 of some – at some point.

(Trial Tr. II, p. 243.)  The creation date for all of the imagery admitted into evidence at trial was after September 13, 2018.  (*See id.*, pp. 247-61.)  Thus, the question is whether Mr. Kircher's testimony about the earliest creation date for illegal imagery on the hard drive showed by a preponderance of the evidence that Mr. Manning committed the offense before September 13, 2018.

It did not.  Agent Kircher's testimony on this score was equivocal and uncertain.  He first testified that the earliest creation date on the devices was "[a]round August of 2018."  When asked again, he added

43

the qualifier "[i]f I recall," meaning that he was unsure whether his estimate was correct. From there, the government had the opportunity at trial to refresh Agent Kircher's recollection or offer more concrete evidence of the earliest creation date, but did not do so.

At sentencing, the government again passed on the opportunity to present better evidence of the earliest creation date after Mr. Manning had lodged his objection. For instance, if it actually existed, the government could have offered into evidence any illegal imagery with August 2018 creation dates (indeed, the government offered copious evidence at sentencing regarding restitution and other matters unrelated to the guideline range). Instead, it relied exclusively on one page of a trial transcript, with an uncertain estimate by Agent Kircher.

As it stands, the government failed to meet its burden to establish that Mr. Manning's offense conduct commenced by September 13, 2018. Mr. Manning is entitled to resentencing on the existing record without the enhancement. *See Campos*, 2023 WL 5211563, at *10.

44

## CONCLUSION

For the foregoing reasons, Mr. Manning asks the Court to reverse his conviction and remand for a new trial. Alternatively, he asks the Court to vacate his sentence and remand for resentencing on the existing record.

Respectfully submitted,

*/s/ Brad Hansen*

BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

45

## CERTIFICATE OF FILING AND SERVICE

I certify that on September 18, 2023, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I scanned the brief for viruses using Trend Micro Apex 14.0.11564. Also on September 18, 2023, a motion for permission to file the Addendum under seal and the proposed Addendum was sent via Federal Express to the Clerk of Court.

I further certify that, on September __, 2023, after the Court approved the brief and addendum, I sent via FedEx ten paper copies of the brief and addendum to the Clerk of Court; one paper copy of the brief and addendum via regular U.S. mail to Assistant U.S. Attorney Ron Timmons; and one copy of the brief and addendum via regular U.S. mail to the appellant.

Respectfully submitted,

*/s/ Brad Hansen*
BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

46

## FED. R. APP. P. 32(a)(7) AND 8TH CIR. RULE 28A(c) CERTIFICATION

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). The brief uses a proportional-space, 14-point Century Schoolbook font. Based on a word count under Microsoft Word Version 14, the brief contains 830 lines and 8172 words, excluding the items listed in Fed. R. App. P. 32(f).

Respectfully submitted,

*/s/ Brad Hansen*
BRAD HANSEN
Attorney for Appellant
Federal Defender's Office
400 Locust Street, Suite 340
Des Moines, Iowa 50309
EMAIL: brad_hansen@fd.org
PHONE: (515) 309-9610
FAX: (515) 309-9625

47